USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 29 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Complaint of

MS "ANGELN" GMBH & CO. KG, and ANGELN
SHIPPING COMPANY LTD., as Owner and
Bareboat Charterer of the MV ANGELN, For
Exoneration from or Limitation of Liability
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Catlin Insurance Company (UK) Limited,
    Claimant / Third-Party Plaintiff

v.

Bernuth Lines Ltd.,
    Third-Party Defendant/
    Fourth-Party Plaintiff

v.

Brise Bereederungs GmBH & CO. KG,
    Fourth-Party Defendant
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM
DECISION AND ORDER

10 Civ. 4820 (GBD)

GEORGE B. DANIELS, District Judge:

    MS Angeln GmbH & Co. KG ("Angeln") and Angeln Shipping Company Ltd. ("Angeln Shipping") (together "Limitation Plaintiffs") bring this action seeking exoneration from or limitation of their liability for the sinking of the container ship M/V Angeln and the resulting loss of the vessel and its cargo. Pursuant to a court order that compels all claims related to the sinking to be brought in this case, several cargo interests asserted claims against Limitation Plaintiffs. These cargo interests also filed claims against Bernuth Lines Ltd. ("Bernuth"), the time charterer[1] of the M/V Angeln at the time of its sinking. Bernuth counterclaimed against

---

[1] A time charter is a contract for the use of a vessel for a particular period of time. The time charterer has the right to direct the movements of the vessel, but the owner retains possession and control.

Limitation Plaintiffs and filed a Fourth-Party Complaint against Brise Bereederungs GmBH & CO. KG ("Brise"), which managed the vessel at the time of its sinking.

Brise moves to dismiss the Fourth-Party Complaint[2] against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Bernuth opposes Brise's motion and argues that Brise is subject to personal jurisdiction because of the nature of its relationship with Angeln and Brise's role in bringing this lawsuit, as well as pursuant to Fed. R. Civ. P. 4(k)(2) based upon its aggregate contacts with the United States. Alternatively, Bernuth argues that it should at least be granted jurisdictional discovery before a motion to dismiss is entertained.

Brise's Motion to Dismiss for lack of personal jurisdiction is GRANTED.

## BACKGROUND

The container ship M/V Angeln departed St. Lucia for Barbados at 2130 on February 21, 2010. (Compl. ¶ 9.) Shortly thereafter, the ship capsized, the crew abandoned ship, and the ship sank. (*Id.* ¶ 9-10.) As a result both the vessel and its cargo were a total loss. (*Id.* ¶ 10.)

At all relevant times, Angeln owned the M/V Angeln, Angeln Shipping was the vessel's bareboat charterer,[3] and Bernuth was its time charterer. (*Id.* ¶ 2-4.) Angeln is a corporation organized under the laws of Germany with its principle place of business in Hamburg, Germany. (Compl. ¶ 2.) Angeln Shipping is a corporation organized under the laws of Antigua and Barbuda with its principle place of business in St. John's, Antigua and Barbuda. (Compl. ¶ 3.)

Brise is a ship management company which provided technical and commercial management services for the M/V Angeln at the time of its sinking. (Fourth-Party Defendant

---

[2] Brise originally moved to dismiss the Third and Fourth-Party Complaints against it. However, there is no Third-Party Complaint against Brise.

[3] A bareboat charterer contracts for the use of a vessel without crewing or other provisions. A bareboat charterer often sub-charters the vessel to a time charterer.

Brise Bereederungs GmBH & Co. KG's Memorandum of Law in Support of Motion to Dismiss Third-Party Complaint and Amended Fourth-Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) ("Brise Supp. Mem.") at 1.) Brise provided these services pursuant to a Management Agreement with Angeln. Brise's management responsibilities included maintaining the vessel's condition as well as crewing and operating the vessel. (Bernuth Line's Opposition to Motion to Dismiss Filed by Vessel's Manager, Brise Bereederungs ("Bernuth Opp'n Mem.") at 5.) Angeln paid Brise a percentage of the M/V Angeln's gross freight income in return for its management services. (Bernuth Opp'n Mem. at 6.) Brise was also a limited partner in Angeln and received a share of the company's profits in that capacity. (*Id.* at 6-7.)

Brise is a form of limited partnership organized under the laws of Germany with its principle place of business in Hamburg, Germany. (Brise Supp. Mem. at 2.) Bernuth alleges that Brise has the following contacts with the United States: Brise-managed vessels have called at United States ports as many as 50 times over the last 3-5 years. (Bernuth Opp'n Mem. at 5.) Brise acted as ISM[4] safety manager for these vessels and is responsible for complying with the international safety guidelines required for those vessels to enter the United States. (*Id.*) Brise representatives routinely travel to the United States to solicit business from charterers, charter brokers and others. (*Id.* at 18.) Brise negotiated with Bernuth through a United States-based charter broker. (*Id.*) Brise docked the M/V Angeln in Florida so that Bernuth could inspect the vessel. (*Id.*) Brise contracted with Cap Sante, a Washington State company, to perform inspections, tests, and recertifications for lifeboat systems on Brise-managed vessels. Brise purchased life-saving appliances from Cap Sante. (*Id.*) Brise contracted with United States-

---

[4] The International Safety Management (ISM) Code, *inter alia*, governs the safety of international cargo ship operations.

3

based Globe Wireless Services for telecommunications services for several Brise-managed vessels. (*Id.* at 18-19.) In some instances, Brise ordered spare parts, supplies, and materials for the vessels that it managed from United States suppliers. (*Id.* at 19-21.) Brise had certain repair, testing and certification work performed by United States-based entities. (*Id.*) Some of Brise's various transactions produced email, facsimile or other communications between Brise's office in Germany and United States-based entities. (*Id.*)

## DISCUSSION

### I. Personal Jurisdiction Standard

To avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff has the burden of establishing personal jurisdiction over the defendant. *Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006). Where no evidentiary hearing has been held, nor have the parties engaged in jurisdictional discovery, plaintiff need only make a *prima facie* showing on the basis of legally sufficient allegations of jurisdiction. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

A court considering a motion to dismiss for lack of personal jurisdiction may consider "all pertinent documentation submitted by the parties" because such a motion is "inherently a matter requiring the resolution of factual issues outside of the pleadings." *Mantello v. Hall*, 947 F.Supp. 92, 95 (S.D.N.Y.1996) (internal quotation marks omitted); *accord Dauman v. Hallmark Card, Inc.*, No. 96 Civ. 3608, 1998 WL 54633, at *4 (S.D.N.Y. Feb. 9, 1998) (appropriate for court to weigh affidavits on personal jurisdiction issue); *John Hancock Property and Casualty Ins. Co. v. Universale Reinsurance Co., Ltd.*, No. 91 Civ. 3644, 1992 WL 26765, at *6 (S.D.N.Y. Feb. 5, 1992); *Canadian Group Underwriters Ins. Co. v. M/V Arctic Trader*, No. 96 CIV. 9242, 1998 WL 730334, at *2 (S.D.N.Y. Oct. 19, 1998). All averments by plaintiff of jurisdictional

4

facts must be accepted as true and pleadings and affidavits are to be construed in plaintiff's favor. *In re Magnetic Audiotape*, 334 F.3d at 206.

In an admiralty action, the law of the forum state – here New York – governs personal jurisdiction. *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008); *Nursan Metalurji Endustrisi A.S. v. M/V Torm Gertrud*, No. 07 Civ. 7687, 2009 WL 536059, at *1 (S.D.N.Y Feb. 27, 2009) (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 937 F.2d 44, 50 (2d Cir. 1991).

## II. Brise's Relationship With Angeln Does Not Subject It to Personal Jurisdiction

Bernuth argues that Brise's relationship with Angeln subjects Brise to personal jurisdiction under New York law because Angeln submitted to personal jurisdiction by bringing this action; and (1) Brise is actually a *de facto* general partner of Angeln and is a limited partner in name only, and (2) Brise influenced and controlled Angeln's decision to bring the limitation action and will benefit from the action.[5]

### A. Brise's Role as a Limited Partner of Angeln Does Not Subject It to Personal Jurisdiction

Brise's actions as a limited partner of Angeln do not subject it to personal jurisdiction. Although, "it is well settled under New York law that where a court has personal jurisdiction over a general partnership, it also has personal jurisdiction over the general partners," Bernuth has not demonstrated that Brise's actions as a limited partner make it answerable as a *de facto* general partner.[6] *See U.S. Bank National Assoc. v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 616 (S.D.N.Y. 2008) (citing *Afloat in Fr. Inc. v. Bancroft Cruises Ltd.*, No. 03 Civ. 917, 2003

---

[5] Bernuth originally argued that Brise is subject to jurisdiction as a joint venturer with Angeln but withdrew that argument. *See* Bernuth Supplemental Reply Letter n.1, ECF No. 140.

[6] Because Bernuth has not demonstrated that Brise should be considered a *de facto* general partner, the issue of whether a *de facto* general partner would necessarily be subject to personal jurisdiction based upon a court's jurisdiction over its general partnership need not be addressed.

5

WL 22400213, at *14 (S.D.N.Y. Oct. 20, 2003); *Wichita Fed's Sav. & Loan Ass'n v. Comark*, 586 F. Supp. 940, 943 (S.D.N.Y. 1984)).

New York's choice of law statutes mandate that a foreign limited partnership's organizational structure and the liability of its limited partners are determined by the law of the jurisdiction under which the entity was formed. N.Y. P'ship Law § 121-901 (McKinney) (2011); *see also Maywalt v. Parker & Parsley Petroleum Co.*, 808 F. Supp. 1037, 1059 (S.D.N.Y. 1992) (applying the law of the state of formation to a limited partnership); *Caballero v. Anselmo,* 720 F.Supp. 1088, 1098 (S.D.N.Y.1989); *Strain v. Seven Hill Assocs.,* 75 A.D.2d 360, 365 (N.Y. App. Div. 1980). Angeln is a German corporation organized under the laws of Germany. German law thus governs both the structure of the company and the liability of its limited partners. German law recognizes no exceptions to the rule that a limited partner may not be treated as a general partner. (*See* Brise Resp. Letter 3, Oct. 14, 2011; Decl. of Horst Gieske 1-2.) Thus, Brise cannot be treated as a *de facto* general partner under German law.

Even if New York law is controlling, as Bernuth argues, Brise cannot be treated as a *de facto* general partner. New York Partnership Law § 121-303 sets forth the criteria for holding a limited partner liable as a *de facto* general partner:

> (a) Except as provided in subdivision (d) of this section, a limited partner is not liable for the contractual obligations and other liabilities of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he participates in the control of the business. However, if the limited partner does participate in the control of the business, he is liable only to persons who transact business with the limited partnership reasonably believing, based upon the limited partner's conduct, that the limited partner is a general partner.

N.Y. P'ship Law § 121-303 (McKinney) (2011) (emphasis added). N.Y. P'ship Law § 121-303 makes clear that even when a limited partner exercises control, it is only liable as a general

partner to parties that "reasonably believ[e], based upon the limited partner's conduct, that the limited partner is a general partner." Bernuth has not asserted that it ever dealt with Brise believing it to be a general partner. Thus Brise cannot be treated as a *de facto* general partner under New York law.

### B. Brise's Role In Angeln's Institution of the Limitation Action Does Not Convey Personal Jurisdiction

Bernuth also argues that Brise implicitly consented to jurisdiction by controlling Angeln's decision to file the limitation action and the subsequent litigation. Personal jurisdiction can only be exercised over a non-resident where there is a statutory basis for asserting jurisdiction. *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396 (2d Cir. 2009). Bernuth offers no statutory basis for its "implicit consent" argument nor any legal authority in support of it.[7]

### III. There is No Personal Jurisdiction Over Brise Pursuant to Rule 4(k)(2)

Bernuth invokes Fed. R. Civ. P. 4(k)(2) as an independent basis for jurisdiction over Brise. Rule 4(k)(2) establishes personal jurisdiction over a defendant if: (1) the claim arises under federal law; (2) the defendant is not subject to general jurisdiction in any state; and (3) the exercise of jurisdiction would not offend constitutional due process. Fed. R. Civ. P. 4(k); *Porina*, 521 F.3d at 127. This action arises under federal maritime law. *Porina*, 521 F.3d at 127. Brise

---

[7] This argument was considered in depth and rejected in a persuasive report and recommendation issued by a magistrate judge in this district. *See In re Complaint of Kreta Shipping, S.A.*, No. 96 Civ. 1137, 1998 WL 173167, at *11 (S.D.N.Y. Jan. 29, 1998). There, the court held that "[the ship management company's alleged control of the litigation and its alleged ultimate liability . . . do not constitute . . . 'consent' to this Court's jurisdiction." *Id.* at *23-26. The court likened the ship management company to an insurer in that insurers do not consent to the jurisdiction of a court where a client is litigating even though the insurance company often controls the client's litigation and may ultimately be the liable party. *Id.* at *23.

does not appear to be subject to any state's general jurisdiction. Therefore, only the constitutional inquiry remains.

To determine whether an exercise of personal jurisdiction comports with due process, the Court must engage in a two part analysis: "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 164 (2d Cir. 2010)). Under the first prong, the Court must determine if the party has "sufficient minimum contacts with the [United States as a whole] to justify the court's exercise of personal jurisdiction." *Porina*, 521 F.3d at 127 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996)). If such minimum contacts exist, then the Court determines whether exercising personal jurisdiction "is reasonable under the circumstances of the particular case." *Id.* (citing 84 F.3d at 568). If the Court determines that a defendant lacks the requisite minimum contacts for either general or specific jurisdiction, it need not consider the second prong of the due process test to determine whether the exercise of jurisdiction would be reasonable under the particular circumstances of the case. *See Metro. Life*, 84 F.3d at 568.

With respect to the initial minimum contacts inquiry, jurisdiction can be exercised under a general or specific theory. *Chloe*, 616 F.3d at 164. Under the general theory, a court may exercise jurisdiction if the defendant has continuous and systematic contacts with the forum, even where the cause of action does not relate to or arise out of the foreign defendant's activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16. Under the specific theory, the cause of action is related to or arises out of the defendant's forum related activities. *Id.* at 414 n.8. Bernuth concedes that there is no jurisdiction over Brise under the specific theory. Accordingly, Bernuth must satisfy the "more stringent minimum contacts test" to demonstrate general jurisdiction. *Porina*, 521 F.3d at 127-28 (citing *Metro. Life*, 84 F.3d at 568).

To determine whether a defendant's general contacts can be characterized as having been continuous and systematic, the Court "examine[s] a defendant's contact with the forum [ ] over a period that is reasonable under the circumstances—up to and including the date the suit was filed.'" *Porina*, 521 F.3d at 128 (2d Cir. 2008) (quoting *Metro. Life*, 84 F.3d at 569. For the exercise of general jurisdiction, it is essential that there minimally be some act by which the defendant purposefully avails himself of the privilege of conducting activities in the forum. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Bernuth alleges that a number of Brise's activities in its capacity as operational manager of vessels directed to the United States by time charterers are systematic and continuous so as to convey personal jurisdiction over Brise under a general theory. These activities generally include (1) serving as ISM safety manager of vessels which made up to 50 calls to United States ports over the last 3-5 years; (2) travel by Brise representatives on a "routine basis" for the purposes of soliciting business from charterers, charter brokers and others, for the employment of vessels in the Brise fleet; (3) negotiations with a United States-based charter broker and payment of commission to that broker in the United States; (4) participation in an inspection of the M/V Angeln in the United States; and (5) entering into contracts and securing goods and services from United States-based providers and communicating via email, phone, and facsimile with these providers. These activities are insufficient to confer general jurisdiction.

Calls made to United States ports by Brise-managed vessels at the direction of time charterers are insufficient to confer general jurisdiction over Brise.[8] "The decision to bring [the vessels] to the United States was made, in each case by the ship's charterers . . . [The] unilateral

---

[8] Brise avers that all of the port visits identified by Bernuth were made at the behest of time charterers. (Reply Decl. of Kai-Erik Clemmesen in Supp. of Mot. to Dismiss Am. Fourth-Party Compl. Against Brise Bereederungs GmbH & Co. KG 2-3.)

9

activities of third parties – here, the charterers – cannot, in themselves satisfy the requirement of contact with the forum." *Porina*, 521 F.3d at 128. *See, e.g.*, *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990) (holding that 20 calls to port made by defendant-managed vessels at behest of time charterers were "better characterized as sporadic than continuous and systematic" contacts); *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 628 (11th Cir. 1994) (due process inquiry not satisfied where a sub-charterer, and not the defendant, directed the ship to the forum state).

Bernuth also argues that Brise's role as ISM safety manager for these vessels alters this analysis and demonstrates Brise's "purposeful contacts" with the United States. Because a ship's ISM manager assumes the responsibility for ensuring its ships compliance with certain international safety guidelines required for entry into the United States, Bernuth argues that these vessels could only enter United States waters because of Brise's role. Brise's role in ensuring compliance with an international code does not demonstrate that it purposefully availed itself of the privilege of conducting activities in the United States. In fact, Brise could perform this same role even if none of the vessels ever entered the United States.

Bernuth's assertion that Brise representatives traveled to the U.S. on a "routine" basis for the purpose of soliciting business is a conclusory allegation which fails to establish general jurisdiction over Brise. *See Gmurzynska v. Hutton*, 257 F. Supp.2d 621, 625 (S.D.N.Y. 2003) ("conclusory allegations are not enough to establish personal jurisdiction"). Bernuth's only asserted facts in support of this allegation — that representatives of Brise have visited United States-based charterers and brokers on marketing trips in an effort to generate business for vessels within the Brise fleet — are insufficient. (Bernuth Opp'n Mem. at 18.) A foreign [business entity] must be doing business in the forum with a fair measure of permanence and

10

continuity, as opposed to occasionally or casually, in order to be deemed to have presence in the forum. *Li v. Hock*, 371 Fed. Appx. 171, 174-75 (2d Cir. 2010) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)). There is no indication that the alleged visits at issue here were of sufficient frequency to create personal jurisdiction.[9] *See NewMarkets Partners LLC v. Oppenheim*, 638 F.Supp.2d 394, 401, 404 (S.D.N.Y. 2009) (holding that occasional business visits were insufficient to establish general jurisdiction under New York law and Rule 4(k)); *see also Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1045 (2d Cir. 1990) (holding that 26 visits over a period of 18 months by different employees for different accounts were too "sporadic" to be "continuous and systematic" under New York law).

The remainder of Brise's alleged contacts are similarly insufficient. Brise's participation in an inspection of the M/V Angeln in the United States is insufficient to subject it to general jurisdiction. *Porina*, 521 F.3d at 129 (holding that an isolated visit by company officials to the U.S. for an inspection of a vessel did not support a finding of continuous and systematic contacts). Brise's sporadic relations with businesses in the United States for the provision of various services and purchases for vessels it managed also do not convey jurisdiction because these relations were largely conducted from Germany and were made on the behalf of those vessels' owners. *See Estate of Ungar v. Palestinian Authority*, 400 F. Supp. 541 (S.D.N.Y. 2005) (holding that the sales of goods and services for use in its overseas business and a number

---

[9] Brise's employment of United States-based charter brokers for negotiations is also of little value in the jurisdictional analysis under an agency theory because Bernuth has not alleged that the brokers were solely employed by Brise. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (explaining that an agent employed by the party against which jurisdiction is asserted must not be employed by other clients for similar services if that agent is to factor into an evaluation of general jurisdiction); *see also Doe ex rel. Doe v. Abercrombie & Kent, Inc.*, 09 Civ. 7052, 2010 WL 286640 *3 (S.D.N.Y. Jan. 19, 2010).

of contractual relationships with United States telecommunications providers could not subject defendant to general jurisdiction in New York or in the United States as a whole); *See also Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Helicopteros,* 466 U.S. at 414) ("[w]hen a defendant's contacts with the United States are confined to intermittent purchases, limited self-promotion, and a few narrow relationships with American businesses, the exercise of nationwide general jurisdiction would 'offend traditional notions of fair play and substantial justice.'") Brise lacks sufficient minimum contacts with the United States to justify the Court's exercise of general personal jurisdiction.

## IV. Jurisdictional Discovery Is Not Warranted

District courts have broad discretion to decide whether to allow jurisdictional discovery and, if so to what extent. *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic,* 582 F.3d 393, 401 (2d Cir.2009); *Lehigh Valley Inds., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir.1975). A district court is "typically within [its] discretion to deny jurisdictional discovery when the plaintiff [has] not made out a prima facie case for jurisdiction." *Frontera,* 582 F.3d at 401 (internal quotations omitted); *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998) (district court did not err in denying jurisdictional discovery because the plaintiff failed to establish a *prima facie* case of jurisdiction); *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 417 (S.D.N.Y. 2009).

Bernuth contends that it should be granted jurisdictional discovery because: (1) an evaluation of Brise's role in Angeln is a fact-intensive inquiry requiring additional facts; and (2) discovery is needed to complete the Fed. R. Civ. P. 4(k)(2) jurisdictional analysis. Here, Bernuth has failed to set forth a *prima facie* case of jurisdiction, and discovery will not alter the jurisdictional analysis. Additional facts regarding Brise's role in Angeln will not bear on

whether there is jurisdiction over Brise under New York law. With respect to the 4(k)(2) analysis, while discovery may uncover additional contacts, there is no reason to conclude that the nature and extent of additional contacts would be any more jurisdictionally significant than those which have already been analyzed.

## CONCLUSION

Brise's Motion to Dismiss the Fourth Party Complaint against it pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is GRANTED.

Dated: March 28, 2012
       New York, New York

SO ORDERED:

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge